**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YESENIA JAVIER MARIA (A.K.A WANDA), *individually and on behalf of others similarly situated,*

Plaintiffs,

EL MAMBI REST CORP. (D/B/A MAMBI), EL MAMBI STAKEHOUSE CORP. (D/B/A MAMBI), RAUL ACOSTA, RAULITO ACOSTA, GABRIEL DOE, RAFAELINA (A.K.A NINA) BAUTISTA, and GIOVANNI BAUTISTA

Defendants.

CA NO. 1:20-cv-03707 (JPO)

**AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

STATE OF NEW YORK    )
                       )   ss.:
COUNTY OF NEW YORK  )

RAUL RYAN ACOSTA, being duly sworn deposes and says the following pursuant to the penalty of perjury:

1. I am an owner of El Mambi Steakhouse Corp. and as such am fully familiar with all facts stated herein.

2. My father, Raul Acosta is the Owner of El Mambi Rest Corp.

3. El Mambi Rest. Corp. was formed on June 30, 2006 and thereafter began operating the restaurant currently known as Mambi Steakhouse Bar and Restaurant (hereinafter the "Restaurant"). Exhibit A.

4. It is my understanding that during this period Plaintiff was paid properly and provided proper notices. Exhibit B.

5. My business partner Gabriel and I incorporated El Mambi Steakhouse Corp. on September 12, 2017 and purchased the Restaurant on October 19, 2017. Exhibits C – D.

6. The Restaurant was purchased for $275,000 with $25,000 down and $250,000 to be paid in monthly installments until October 2022. Exhibit E.

7. As of the purchase, Gabriel and I are the only managers and owners of the Restaurant.

8.  Since that date neither my father, Raul Acosta nor El Mambi Rest Corp. have been associated with the Restaurant.

9.  Plaintiff was a waitress at the Restaurant.

10. Plaintiff worked the counter and the floor serving customers.

11. Since waiters at the counter and on the floor rotate and receive tips at both places all of their tips are accumulated in a tip pool that is divided between themselves at the end of the shift.

12. For some time, Plaintiff's colleagues suspected that Plaintiff had been stealing tips destined for the tip pool.

13. On or about the last week of January 2020, Plaintiff was caught on camera misappropriating tips that should have gone into the tip pool.

14. Thereafter, she was confronted and terminated from employment at the Restaurant.

15. During her employment for El Mambi Steakhouse Corp. Plaintiff punched a clock and was paid in accordance with the labor laws.

16. After she was fired, Plaintiff went to my father asking to be reinstated. However, since he has no part of the Restaurant, he was powerless to help her.

17. Eventually, and without my knowledge or consent my father got Plaintiff a job at a restaurant owned by a friend of his.

Raul Ryan Acosta

Sworn to before me this 21st
day of December 2020

Notary Public

JENNIFER HERNANDEZ
NOTARY PUBLIC OF NEW JERSEY
Commission # 50104786
My Commission Expires 5/23/2024

# EXHIBIT A

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 18, 2020.

Selected Entity Name: EL MAMBI REST CORP.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | EL MAMBI REST CORP. |
| **DOS ID #:** | 3383506 |
| **Initial DOS Filing Date:** | JUNE 30, 2006 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
EL MAMBI REST CORP.
4181 BROADWAY
NEW YORK, NEW YORK, 10033

**Chief Executive Officer**

RAUL ACOSTA
4181 BROADWAY
NEW YORK, NEW YORK, 10033

**Principal Executive Office**

EL MAMBI REST CORP.
4181 BROADWAY
NEW YORK, NEW YORK, 10033

**Registered Agent**

NONE

This office does not record information regarding the
names and addresses of officers, shareholders or directors
of nonprofessional corporations except the chief executive
officer, if provided, which would be listed above.
Professional corporations must include the name(s) and
address(es) of the initial officers, directors, and

shareholders in the initial certificate of incorporation,
however this information is not recorded and only available
by <u>viewing the certificate.</u>

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
| --- | --- | --- |
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
| --- | --- | --- |
| JUN 30, 2006 | Actual | EL MAMBI REST CORP. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State.
The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

<u>Search Results</u>    <u>New Search</u>

# EXHIBIT B

Notice and Acknowledgement of Pay Rate and Payday/Aviso y Acuse de Recibo de Tasa de Pago y Día de Cobro
Under Section 195.1 of the New York State Labor Law/Bajo la Sección 195.1 de La Ley de Trabajo del Estado de Nueva York
Notice for Hourly Rate Employees/Aviso para empleados con tasa de pago por hora



**1. Employer Information/Información del Empleador**

Name/Nombre:
El Mambi Res (on)

Doing Business As (DBA) name(s)/
Nombre(s) comercial(es):
Mambi' Reak house

FEIN (optional)/ Número de Identificación
Federal (opcional):
205 156 538

Physical Address/Dirección Física:
41 81 Broadway

Mailing Address/Dirección postal u oficial:
New york   NY. 100 3 3

Phone/Teléfono: 1212 98 6996

**2. Notice given/Aviso emitido:**

☒ At hiring/ En la contratación

☐ On or before February 1/En o antes del
1 de Febrero

☐ Before a change in pay rate(s)/,
allowances claimed or payday. Antes de
un cambio en tasa de pago, créditos
tomados, o día de cobro

LS 54S (03/11)

**3. Employee's Pay Rate/Tasa de pago del empleado:**

$ 7.50 per hour/por hora

**4. Allowances taken/Créditos tomados:**

☒ None/ninguno

☐ Tips/Propinas 3rd per hour/ por hora

☐ Meals/Comidos _____ per meal/ por
comida

☐ Lodging/ Hospedaje _____

☐ Other/Otro _____

**5. Regular payday/Día de Cobro Regular:**

Domingo -

**6. Pay is/El pago es:**

☒ Weekly/ Semanal

☐ Bi-weekly/Quincenal

☐ Other/Otro _____

**7. Overtime Pay Rate/Tasa de Pago de Horas
Extras (más de 40 horas trabajadas en una
semana).**

$ 12.00 per hour/por hora (This must be at
least 1¼ times the worker's regular rate, with
few exceptions.)/Con pocas excepciones, esta
tasa debe ser por lo menos 1¼ veces la tasa de
pago regular para el trabajador. .

**8. Employee Acknowledgement/Acuse de
Recibo del Empleado:** On this day, I received
notice of my pay rate, overtime rate if eligible,
allowances, and designated payday in English
and my primary language. I told my employer
that my primary language is Spanish. En esta
fecha, se me ha informado de mi tasa de pago,
mi tasa de pago de horas extras (si elegible),
créditos, y del día de cobro en inglés y en mi
lengua materna. Le indiqué al empleador de qu
mi lengua materna es español.

X _____
Print Employee Name/Escriba el nombre del
empleado en letra de imprenta

X __Wanda Estrella_____
Employee signature/Firma del Empleado

Date/Fecha
Wanda _____
X 1/8/17

Preparer Name and Title/Nombre y Título del
Preparador de este Documento.

The employee must receive a signed copy of
this form. The employer must keep the
original for 6 years./El empleado debe recibir
una copia firmada, de este documento. El
original debe permanecer con el empleador
por 6 años.

# EXHIBIT C

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 18, 2020.

Selected Entity Name: EL MAMBI STEAKHOUSE CORP.
Selected Entity Status Information
Current Entity Name: EL MAMBI STEAKHOUSE CORP.
DOS ID #: 5200745
Initial DOS Filing Date: SEPTEMBER 12, 2017
County: NEW YORK
Jurisdiction: NEW YORK
Entity Type: DOMESTIC BUSINESS CORPORATION
Current Entity Status: ACTIVE

Selected Entity Address Information
**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
EL MAMBI STEAKHOUSE CORP.
4181 BROADWAY
NEW YORK, NEW YORK, 10033
**Registered Agent**
NONE

This office does not record information regarding the
names and addresses of officers, shareholders or directors
of nonprofessional corporations except the chief executive
officer, if provided, which would be listed above.
Professional corporations must include the name(s) and
address(es) of the initial officers, directors, and
shareholders in the initial certificate of incorporation,
however this information is not recorded and only available
by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| SEP 12, 2017 | Actual | EL MAMBI STEAKHOUSE CORP. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

# EXHIBIT D

## ASSET PURCHASE AND SALE AGREEMENT

AGREEMENT, entered into as of this 19th day of October, 2017 (the "Agreement"), by and between EL MAMBI RESTAURANT CORP., a New York Corporation having its office at 4181 Broadway, New York, NY 10033, hereinafter referred to as the "Seller" and EL MAMBI STEAKHOUSE CORP., a New York Corporation having an address at 4181 Broadway, New York, NY 10033 hereinafter referred to as the "Purchaser."

## W I T N E S S E T H:

1.   <u>Purchase and Sale</u>. Seller agrees to sell and Purchaser agrees to purchase for the purchase price (as hereinafter defined) the assets, trade fixtures, equipment, chattels, goodwill and leasehold interest, including the items listed on Schedule "A" hereto, owned and operated by Seller and located at 4181 Broadway, New York, NY 10033, upon the terms and conditions stated herein.

2.   <u>Purchase Price</u>. The purchase price to be paid by Purchaser (the "Purchase Price") shall be the sum of **Two Hundred Seventy-Five Thousand and 00/100 ($275,000.00) Dollars**, payable as follows:

(a)   The sum of **Twenty-Five Thousand and 00/100 ($25,000.00) Dollars** paid directly to Seller.

(b)   By execution and delivery of a Promissory Note in the amount of **Two Hundred Fifty Thousand and 00/100 ($250,000.00) Dollars.**

3.   <u>Bill of Sale.</u>  At Closing, Seller shall execute and deliver to Purchaser a bill of sale conveying all of the Trade Fixtures being conveyed hereunder listed on Schedule "A", free and clear of and from any and all liens or encumbrances of any kind or nature whatsoever.  The bill of sale shall contain the usual affidavit of title.

4.   <u>Assignment of Lease.</u> At Closing, Seller shall assign the Lease to Purchaser, including the security deposited thereunder, and Purchaser shall execute an assumption of Tenant's obligations under the Lease.

5.   <u>Seller's Covenants, Representations and Warranties</u>. Seller covenants, represents and warrants the following as of the date of this Agreement and as of the date of Closing:

Seller is a Corporation, duly organized, validly existing and in good standing under the laws of the State of New York; (ii) Seller has the requisite power and authority to execute, deliver and perform its obligations under this Agreement; (iii) Seller's execution and delivery of this Agreement, and the performance of Seller's obligations hereunder, have been authorized by all necessary corporate action on the part of Seller; and (iv) the individual executing this Agreement on behalf of Seller has been duly authorized by Seller to execute same.

This Agreement and the documents contemplated hereby shall, upon execution by the parties thereto, be the legal, valid and binding obligations of Seller and shall be enforceable against it in accordance with their terms.

Seller is not the subject of a bankruptcy, reorganization or other insolvency proceeding.

There are no suits or proceedings pending, or to Seller's knowledge threatened, which affect or involve the Premises before or by any federal, state or other governmental agency, or before any arbitrator, other than what may be covered by insurance. Seller has no knowledge that any condemnation or similar proceeding affecting any of the Premises is threatened or contemplated.

Seller is not a party to any written agreement or other commitment of any kind for the sale of any of the Property, the subletting of the Premises, or the assignment of the Lease.

Seller is in occupancy and possession of the Premises pursuant to a written Agreement of Lease dated November, 2007 and amended on May, 2010 ("Lease") between 4181 BROADWAY LLC as Landlord, and Seller as Tenant. To the best of Seller's knowledge, the Lease is valid and enforceable, and Seller is not in default thereunder for which it has received written notice. Seller knows of no default on the part of Landlord under the Lease. All rents and other charges under the Lease are current and will be current at the Closing. Seller has not previously assigned, pledged, hypothecated or transferred its interest in the Lease, and the Lease has not been amended.

Other than the Lease, there are no written tenancy or occupancy agreements, leases or other similar commitments of any kind which affect the Premises.

Seller shall not, after the date hereof, encumber or impair its existing leasehold interest created by the Lease.

To the best of Seller's knowledge, there are currently no existing or outstanding notices of violations of law or governmental ordinances, orders or requirements with respect to the Premises, except as expressly set forth in this Agreement.

Seller represents that the Trade Fixtures will at Closing be free and clear of any liens, mortgages, and encumbrances. In the event there are any such liens, Purchaser may deduct so much of the Purchase Price as is necessary to obtain a payoff of those liens. Seller makes no representation as to the condition of the Trade Fixtures and the Premises and same are being sold in their "As Is" condition as of the date of this Agreement, subject to reasonable wear and tear and replacement.

The on-premises liquor license issued by the State Liquor Authority to Seller is in full force and effect.

Seller has a valid Place of Assembly Permit covering the Premises.

All of property conveyed hereunder is owned by Seller.

The trade fixtures and equipment to be conveyed hereunder shall be in working order as of Closing.

As of this date there are no orders from the Board of Fire Underwriters or violations of record existing against the business or Premises. (The existence of any such orders or violations shall not be deemed an objection to the title. If they are called to Seller's attention prior to Closing Seller agrees to remove them at its own cost and expense, or, if they are not removed prior to Closing, Seller will deposit a sufficient sum with the Escrowee at Closing to assure the dismissal of record of such orders or violations. If the cost of removal exceeds $10,000.00 Seller may cancel this agreement without liability. In such event Buyer may nevertheless elect to take title, receive a $10,000.00 credit against the cash, and thereupon Buyer shall promptly cure same).

Seller has a valid permit from the Health Department of the City of New York and to the best of Seller's knowledge there are no pending violations or orders by Department of Health against Seller or the Premises.

No work, labor or materials have been performed upon or delivered to the Premises for or at Seller's request within eight (8) months preceding the date hereof which are or could be the basis for filing of any mechanics' lien. In the event any such lien shall be filed prior to Closing, Seller shall discharge such lien prior to Closing.

All of the terms, covenants, conditions, and representations set forth in this Agreement shall survive the Closing for a period of two (2) years, except as expressly stated to the contrary in this Agreement.

6.    <u>Purchaser's Representations</u>. Purchaser covenants, represents and warrants the following as of the date of this Agreement as of the date of Closing:

Purchaser is a Corporation, duly organized, validly existing and in good standing under the laws of the State of New York; (ii) Purchaser has the requisite power and authority to execute, deliver and perform its obligations under this Agreement; (iii) Purchaser's execution and delivery of this Agreement, and the performance of Purchaser's obligations hereunder, have been authorized by all necessary company action on the part of Purchaser and will not conflict with or breach any provision of the operating agreement of Purchaser; and (iv) the individual executing this Agreement on behalf of Purchaser has been duly authorized by Purchaser to execute same.

No action, approval, consent or authorization of any governmental authority is necessary for Purchaser to consummate the transactions contemplated hereby.

Purchaser has received a copy of and has reviewed the Lease.

Except as otherwise expressly set forth in this Agreement, there were no statements, warranties or representations, oral or written, made by Seller or any other person, nor is Purchaser relying in whole or in part and Purchaser expressly disclaims reliance on any statement, promise or representation made by Seller or any other person with respect to the value or condition of any of the assets to be purchased hereunder, the Seller's business hours, payroll, income, profits, taxes, expenses, leases, liens, security agreements, encumbrances, judgments, debts, creditors, quantity or quality of the trade fixtures, equipment or inventory, executory contracts, status of its licenses, violations of record or notices of violations, unions or union jurisdiction, creditors of Seller, condition of the Premises, taxes due or owing, validity of any licenses or permits, or with respect to any other affairs or status of the business formerly operated at the Premises, or the subject matter of this Agreement,

and Purchaser hereby acknowledges that it is relying instead only on the express representations specifically set forth in this Agreement and its own independent examinations and investigations in entering into this Agreement and purchasing Seller's assets as described herein.

No representations, oral or written, have been made by any third party whomsoever, with respect to any of the matters set forth in the above paragraph, or with respect to any representations made by the Seller, or in any manner with respect to the subject matter of this Agreement.

7.    Allocation.

The parties agree that the fair market value of the Trade Fixtures to be sold hereunder is **$10,000.00** Dollars. Purchaser agrees to pay any New York State Sales Tax on said valuation at the time of Closing, and further agrees to keep Seller safe and harmless from and of the payment of any additional New York State Sales Tax, interest and penalties which may be imposed on the taxable equipment and trade fixtures.

Purchaser further agrees to file an application for a Certificate of Authority to Collect Sales Taxes with the New York State Department of Taxation and Finance within thirty (30) days of the date hereof.

The parties allocate the Purchase Price hereunder as follows:

| | | |
|---|---|---|
| (i) | Trade Fixtures and Equipment | $ 10,000.00 |
| (ii) | Goodwill | $200,000.00 |
| (iii) | Leasehold | $ 15,000.00 |
| (iv) | Covenant not to Compete | $ 50,000.00 |
| | Total | $275,000.00 |

8.    Closing Date and Location. The closing ("Closing") of this transaction shall take place at the offices of Seller's attorneys five (5) business days after the satisfaction of all of the conditions set forth in para. 9(a), (b) and (c) below; however, in no event shall the Closing take place prior to December 15, 2017.

9.    Conditions to Closing.

The Closing hereunder, and Purchaser's obligations, are expressly conditioned upon all of the following:

Landlord's written consent to an assignment of the Lease from Seller to Purchaser.

The approval by Manhattan Community Board of Purchaser's application for a transfer of Seller's liquor license for the Premises on terms and conditions acceptable to Purchaser in its sole discretion; and

The approval by the New York State Liquor Authority of Purchaser's application for a Temporary Retail Permit.

If any of the three conditions set forth above are denied, or remain unsatisfied as of December 15, 2017, then at the option of either Seller or Purchaser, and upon written notice to the other, either party may cancel and terminate this Agreement whereupon the monies paid on account of the Purchase Price shall be returned to Purchaser by Seller (provided Purchaser has not otherwise breached its obligations hereunder) and neither party shall have any further or continuing obligation to the other.

Within ten (10) days from the date hereof, Seller shall request the Landlord's consent to the assignment of the Lease, and Purchaser agrees to provide such documents as are required in the Lease in connection therewith, or as Landlord may reasonably request, including but not limited to financial statements of Purchaser and its principals.

10.   Liquor License.

The Purchaser's obligations, and the Closing hereunder, are not conditioned upon Purchaser obtaining the approval of a transfer of Seller's liquor license. Promptly after execution of this Agreement, Purchaser shall file an application with the New York State Liquor Authority for an on-premises liquor license and for a Temporary Retail Permit. Purchaser shall provide the New York State Liquor Authority with such information as documentation as it shall request or require in connection with the application. Purchaser shall notify Seller in writing of the date it files its applications with the New York State Liquor Authority and shall forward to Seller copies of any and all correspondence, approvals and/or denials received from the New York State Liquor Authority relating thereto.

At Closing Seller shall deliver its original liquor license certificate to Purchaser together with a signed surrender petition and letters authorizing Purchaser's counsel to surrender and/or place said licenses in safe keeping.

At Closing Seller shall convey and Purchaser will purchase Seller's stock of closed alcoholic beverages for which Purchaser shall pay based upon current Beverage Media wholesale price. Within seventy-two (72) hours of Closing, the parties shall take and prepare a written inventory of the stock of closed liquor to be conveyed. Within five (5) days from the date of this Agreement Seller shall prepare and deliver to Purchaser an application for a Liquidator's Permit which Purchaser shall file together with its liquor license application. The transfer under this subparagraph is conditioned upon the New York State Liquor Authority issuing the Liquidators Permit. If that Permit is denied, then prior to Closing Seller shall dispose of its alcoholic beverages in a lawful manner.

11.   Sales Taxes and Seller's Indemnification.

The Promissory Note referenced in paragraph 2(b) above shall serve as a guaranty of payment of any taxes or debts obligated to be paid by Seller under this Agreement.

At Closing, Seller and Raul Acosta shall execute and deliver to Purchaser an indemnification agreement whereby each of them agrees to defend and hold Purchaser harmless of, from and against any and all judgments, claims, demand, lawsuits or actions made or asserted against Purchaser relating to Seller's ownership and/or operation of the business for the period prior to Closing. This indemnification shall include the claims of any taxing authorities. Written notice of any claims under this indemnification shall promptly be given to Seller and Escrowee and Seller shall have the right to retain counsel, at its cost and expense, with respect to any such claim made against

Purchaser covered by this indemnification.

        12.     <u>Purchaser's Indemnification.</u>

At Closing Purchaser and Raul Ryan Acosta shall execute and deliver to Seller an Indemnification Agreement whereby they agree to defend and hold Seller harmless of from and against any and all obligations under the Lease arising out of its ownership and operation of the business for the period from and after the Closing date. Notice of any claims under this provision shall promptly be given to Purchaser and Purchaser shall have the right to retain counsel at its cost and expense with respect to any such claim made against Seller covered by this indemnification.

        13.     <u>Closing Adjustments.</u> (a) At Closing there shall be a cash adjustment for all rent, additional rent and charges under the Lease, Seller's Lease security, and alcoholic beverages at Beverage Media Wholesale cost. The adjustments shall be calculated as of the date of Closing.

        (b) If there are any liens and/or encumbrances against the Property, Purchaser, at its option, shall be permitted at Closing to (i) terminate this Agreement if the aggregate amount of such liens and/or encumbrances is in excess of $100,000 or (ii) deduct an amount from the Purchase Price required to remove such encumbrances and/or liens.

        14.     <u>Default.</u>

If Seller defaults in any material respect under this Agreement, Purchaser shall give Seller notice of such default and Seller shall have ten (10) days after the giving of such notice to cure such default or to commence to cure such default, if in the reasonable opinion of the Seller, such default cannot be cured in such ten (10) day period. If such default has not been cured or commenced to be cured within the prescribed period of time, Purchaser shall have all rights and remedies to which it may be entitled at law or in equity, including specific performance.

If Purchaser fails to close, and Seller is not in default in any material respect under this Agreement, Seller shall give Purchaser notice of such default and Purchaser shall have ten (10) days after the giving of such notice to cure such default or to commence to cure such default, if in the reasonable opinion of the Purchaser, such default cannot be cured in such ten (10) day period. If such default has not been cured or commence to be Cured within the prescribed period of time, Seller may retain the Deposit as liquidated damages and as its sole remedy. If Purchaser fails to close, and Seller is also in default in any material respect under this Agreement, this Agreement shall be terminated and Seller shall return the Deposit to Purchaser.

        15.     <u>Risk of Loss.</u> Risk of loss or damage by fire, prior to Closing, shall be borne by Seller. In the event such loss or damage would cost in excess of $200,000 to repair, either of the parties hereto may, at its option, cancel this Agreement, in which event Purchaser shall be entitled to the return of the Deposit, and thereupon neither of the parties hereto shall have any further claim as against the other.

        16.     <u>Assignments.</u> Purchaser may not transfer or assign any of its rights or obligations under this Agreement without the prior written consent of Seller and any such transfer or assignment or attempt thereat will be null and void.

17.    Access. Prior to Closing, Purchaser and Purchaser's representatives shall have the right, upon reasonable notice by Purchaser to Seller, to enter upon the Premises or any part thereof at reasonable times in a manner that does not damage or injure the Premises or Seller's goodwill or employee relations, to inspect the Premises, take measurements or conduct additional inspections.

18.    Restrictive Covenant. At Closing Seller and its members will enter into an agreement whereby each of them agree not to engage in a restaurant or bar business in any capacity whatsoever, directly or indirectly, for a period of three (3) years from Closing within the following area: one-mile radius.

19.    Utilities. Purchaser agrees to place its own deposits for gas and electric service within one (1) week after Closing, at which time Seller shall have the right to cancel its utility service contracts and to obtain a return of its deposits for such service, if any.

20.    Existing Warranties. At Closing Seller shall assign to Purchaser (to the extent assignable) and deliver any and all existing warranties, if any, on the trade fixtures and equipment to the conveyed hereunder.

21.    Language Construction. If Seller or Purchaser are individuals then wherever the personal pronoun "it" is used herein to refer to either Seller or Purchaser, the appropriate personal pronoun shall, where necessary, be deemed substituted therefor. Furthermore, the headings of the various paragraphs of this agreement are inserted only for the purposes of convenience and shall not in any manner modify or restrict any provision of this Agreement.

22.    Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of New York.

23.    Notices. Notices and other communications under this Agreement shall be in writing and sent to each party at its address by overnight courier, or in the event of a change in any address, then to such other address as to which notice of the change is given. A copy of any notice sent to Seller shall also be    sent to Manuel Fabian, Esq., 37-32 75th Street, Jackson Heights, NY 11372.  A copy of any notice sent  to Purchaser shall also be sent to Edmundo Roman Perez, Esq. 505 59th Street, Brooklyn, NY 11220.

24.    Counterparts. This Agreement may be executed in any number of counterparts. It is not necessary that all parties sign all or anyone of the counterparts, but each party must sign and deliver at least one counterpart for this Agreement to be effective. Each of the persons signing below warrants that he is duly authorized to sign this Agreement on behalf of the party for which he is signing.

25.    Amendments. This Agreement may be amended only by an instrument in writing signed by the parties hereto.

26.    Waiver. The failure or delay of either party in enforcing any right or obligation or any provision of this Agreement in any instance shall not constitute a waiver thereof in that or any other instance. Either party may only waive any such right, obligation or provision by an instrument in writing signed by it.

27.     <u>Rights Cumulative</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law or by any other agreement. The exercise by any party of any right or remedy will not preclude such party from exercising any other right or remedy. Further, any party may pursue its rights and remedies in such order as it determines.

28.     <u>Entire Agreement; Binding Effect</u>. This Agreement contains the entire understanding of the parties with respect to the subject matter of this Agreement, and it supersedes all prior understandings and agreements, whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof. The delivery of this Agreement shall not constitute an offer and this Agreement shall not become binding until a fully executed counterpart has been delivered to Purchaser.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

EL MAMBI RESTAURANT CORP.

BY: RAUL ACOSTA

EL MAMBI STEAKHOUSE CORP.

BY: RAUL RYAN ACOSTA

BY: GABRIEL CRUZ-CAPOTE

# EXHIBIT E

# EXHIBIT A

### PROMISSORY NOTE

$250,000.00

October   , 2017

EL MAMBI STEAKHOUSE CORP., at 4181 Broadway, New York, NY 10033 promises to pay to the order of EL MAMBI RESTAURANT CORP., 4181 Broadway, New York, NY 10033, the sum of $250,000.00 payable as follows:

with interest thereon to be computed from the date hereof at the rate of 5% per centum per annum, and to be paid on the November   , 2017 next ensuing and monthly thereafter in the amount of $4,717.81 representing payment of principal and interest only until October   , 2022 when the entire amount of principal shall become due.

In the event of default of any installment, the balance is due with interest at 5% per annum on the outstanding balance from the date of execution of this note to date of payment.

Nothing herein contained, nor any transaction related hereto, shall be construed or so operated as to require maker, or any other person who may become liable for repayment of this Note, to pay interest at a greater rate than is now lawful to contract for, or to otherwise make any payment, or to do any act contrary to law.  In the event any interest or other charges paid by maker, or other parties who become liable for the payment of this Note, in connection with the Loan, or the Security Agreement securing the payment of this note, or any other document delivered in connection with the Loan, result in the computation or earning of interest in excess of the maximum rate of interest which is legally permitted under the laws of the applicable jurisdiction, then any and all excess shall be and the same is hereby waived by Lender, the holder hereof. Furthermore, any and all such excess shall be automatically credited against and in reduction of the balance due under the indebtedness, and any portion of the excess which exceeds the balance due under this indebtedness shall be paid by lender or the holder hereof to the maker and parties who may be liable for the payment of this Note. If any clause or provision herein contained shall be unenforceable under applicable law, in whole or in part, then such clause or provision or part thereof shall only be held void, as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

For value received, the undersigned hereby forever waives presentment, demand, protest, notice of dishonor of the within note and the undersigned guarantees the payment of said note at maturity and consents, without notice, to any and all extensions of time or terms of payment made by holder of said note.

This note is secured by a Chattel Mortgage for premises at 4181 Broadway, New York, NY 10033.

EL MAMBI STEAKHOUSE CORP.

BY: Raul Ryan Acosta- President